(18 Misc. Rep. 674.)

### BOSCOWITZ v. HELD et al.

(Supreme Court, Special Term, New York County. December, 1896.)

1. TRUSTS—POWER TO MORTGAGE TRUST PROPERTY.
    A power to sell or mortgage real estate, "as to them may seem best," given by a will to the trustees therein appointed to administer property during the continuance of a life estate, does not authorize the execution of a mortgage to secure the personal indebtedness of a trustee.

2. MORTGAGES—FORECLOSURE—ESTOPPEL BY JUDGMENT.
    A judgment for the foreclosure of a mortgage on trust property, which was executed by the trustees in contravention of the trust, does not establish the validity of the mortgage, so that a purchaser at the foreclosure sale may be required to complete his purchase, where the trustees colluded with the mortgagee to dispose of the trust property by means of the foreclosure sale, and did not defend the action.

Action by Ignatz Boscowitz, as trustee, etc., against Zerlina Held and others, to foreclose a mortgage. There was a foreclosure sale, and plaintiff moves for an order compelling the purchaser to complete his purchase. Denied.

Charles Strauss, for plaintiff.
Edward E. Sprague and William H. Stockwell, for the purchaser.

BEEKMAN, J.  This is a motion on the part of the plaintiff to compel the purchaser under the judgment of foreclosure and sale to complete his purchase; the latter having refused to do so upon various grounds affecting the title to the premises, of which but one, however, is relied upon in opposing the motion.  The question involved arises upon the following facts:  One Samuel J. Held died on the 17th day of June, 1892, seised of the property in question. He left a last will and testament, which was duly admitted to probate in this county on the 12th day of July, 1892; and on the same day letters testamentary were issued to Zerlina Held, his wife, and one Bernhard Hecht, two of the executors named therein.  By the terms of the will the testator devised his residuary estate, both real and personal (which included the property in question), to his executrix and executors named therein, in trust to pay the rents, issues, and profits to his wife, the said Zerlina Held, during her lifetime, or as long as she should remain his widow.  This was accompanied with a requirement that out of such income she should properly support, maintain, and educate testator's children during their infancy. He also provided that, if his wife should marry again, then his estate should be divided into as many shares as should equal the number of his children, with his wife, and that one share should be set apart and invested for each of his said children and his said wife;  the principal and income of the share of each child to be disposed of in the same manner as he had provided in his will for the same upon the death of his wife, and the income of the share so to be set apart for the benefit of his wife to be paid to her during her lifetime.  It was further provided that upon the death of the testator's wife the estate should be divided, share and share alike, among his children, the share of each of the sons to be invested until he should have attained his majority;  the interest and income in the meantime to be applied to his maintenance, education, and support, and the principal to be received by him upon his attaining his majority. With respect to the shares of the daughters, the executors were required to invest the same, and to pay to each of such daughters the interest and income derived from the share so invested for her benefit during her life, and upon her death the principal of such share was to be divided among her children in equal shares; but, if no children survived her, then such principal was to be divided, share and share alike, among her brothers and sisters, if any.  The seventh paragraph of the will reads as follows:

"7th. I nominate, constitute, and appoint my wife, Zerlina, executrix, and my friends, Edward Lauterbach and Bernhard Hecht, executors and trustees, of this my last will and testament, and guardians of the persons and estate of my infant children during their minority;  hereby authorizing and empowering them, my said executors, to lease, sell, or mortgage any or all real estate of which I may die seised, and to convert realty into personalty, and personalty into realty, as to them, my said executrix and executors, may seem best.  Should either of my said executors die or fail to qualify during the lifetime of my wife, I desire that a substitute or substitutes for such executor or executors shall be designated and appointed by my said wife."

There are other provisions contained in the will, but they are not material to the decision of the question which is before me.  It ap-

pears from the answering affidavit that on or about the 10th day of
July, 1893, about a year after the probate of the will, the said Zer-
lina Held, Jeanne Held, and S. Julien Held united in the formation
of a corporation known as S. J. Held Company, for the purpose of
transacting a general millinery business. The capital stock was
fixed at $100,000, in shares of the par value of $100 each, of which
900 shares were subscribed for by the said Zerlina Held, and the
balance, in equal parts, by the other two incorporators. On or
about the 8th day of August, 1893, Zerlina Held and Bernard Hecht,
as executrix and executor of said will, claiming to act in pursuance
of the authority to mortgage conferred upon them thereunder, made
and delivered to the plaintiff a bond, and also a mortgage upon the
premises in question, conditioned for the payment of $15,000 and
interest, in each of which instruments it was stated that the same
was given "as collateral security for the payment of certain notes
given and to be given to the Mechanics' & Traders' Bank of the City
of New York for moneys advanced and to be advanced." Neither
the bond nor the mortgage contained any other statement than this
with respect to the purpose for which they were given, or the nature
of the advances or loans which were intended to be secured thereby.
Thereafter this action was instituted for the foreclosure of the mort-
gage. The complaint sets up the will, and the making of the bond
and mortgage, and then alleges "that the said defendants, Zerlina
Held, as executrix, and Bernard Hecht, as executor, aforesaid, have
failed to pay the said indebtedness as hereinbefore provided, by
omitting to pay four notes representing advances made by the Me-
chanics' & Traders' Bank, for which said bond and mortgage were
given as collateral security, amounting in the aggregate to the sum
of $12,500, and interest thereon." It also alleges that no other pro-
ceedings have been had for the recovery of the amount claimed to
be due, "except that two actions were instituted in the supreme
court, city and county of New York, upon two of the notes intended
to be secured by said bond and mortgage first above mentioned,
resulting in judgments being entered therein, and executions duly
issued thereon to the sheriff of the city and county of New York,
where the judgment rolls on said judgments were filed, but that no
part of either of said two judgments was collected, and said sheriff
has duly returned said executions wholly unsatisfied, and said judg-
ments remain wholly unpaid." It appears from the answering affida-
vits that the judgment rolls in these actions show that the notes so
recovered upon were respectively made by the corporation, S. J. Held
Company, to its own order, for $2,500 each, and were indorsed by said
company and by Zerlina Held, the indorsement of the latter in each
case expressing that it was made by her "for the purpose of guar-
antying the payment of said note." At the time that the actions
upon these notes were brought, Zerlina Held was the president of
the corporation. The executrix and executor were made parties
defendant to this action, with others. No answers were interposed,
and judgment by default was taken, under which a sale has been
had.

The purchaser at this sale bases his refusal to take title upon the ground that the mortgage in question was not given for any advances made to the estate of the deceased, or for any consideration passing from the plaintiff or the bank to such estate, but that, on the contrary, it was made to secure loans or advances that had been made, or were thereafter to be made, to the corporation, or to Zerlina Held individually. It is not necessary to cite authorities for the very plain proposition that, under such a trust power as was conferred upon these executors, they had no right to mortgage the property of their testator, except to secure the payment of advances actually made to them for the benefit of the estate. Notwithstanding this, the undisputed facts of this case disclose an attempt, through the pretended exercise of such a power, to apply trust property to a private, personal, use, for which there is no sanction whatsoever in the will, and—what is an aggravation of the offense—to promote thereby the personal interests of one of the executors. A plainer breach of trust, a clearer case of deliberate misappropriation of trust property, could scarcely be imagined. Without doubt, the mortgage was void, and neither the plaintiff nor the bank which he represents ever acquired under it any lien whatsoever upon the property in question.

But it is claimed on the part of the plaintiff that because his proceedings in foreclosure have been regular, and he has made every person a party defendant who would have been a proper party to such an action if the mortgage were not open to question, all persons now in being, or who may hereafter come into being, and who would otherwise be interested in the property, are bound by the judgment, and would be estopped from in any way attempting to impeach the validity of the mortgage. While the principle is a well-established one that such a judgment ordinarily concludes the parties and those whom they represent from subsequently opening up a controversy with respect to the subject-matter of the litigation, I do not think that the case here presented is one in which the application of that principle determines the question which is really raised upon the facts here presented. Where it appears, as it does here, that the judgment so obtained is uncontested, and is a step towards the accomplishment of an unlawful scheme by which a trust is to be defeated, and the rights of those contingently interested are to be extinguished, the judgment, as well as the mortgage upon which it is founded, are equally open to assault as fraudulent; and a court of equity finds little difficulty in sweeping them aside, where the rights of bona fide purchasers for value have not intervened. In this case it may well be doubted whether, upon the face of the record, a purchaser would not be put upon his inquiry with respect to this transaction. It is quite significant that nowhere are the notes characterized in the complaint, or in the course of the foreclosure proceedings. Reference is made in the complaint to certain notes, but they are not described. It is said that they were given and to be given to secure moneys advanced and to be advanced, but it is not stated by whom they had been or were to be given, or to whom the advances had been or were to be made. In fact, it is difficult to escape

the perception that the object of the pleader was to draw a complaint which would be general enough to sustain an inference that the notes were those of the executors, and that the advances were made to the estate, and yet not be, in terms, inconsistent with the real facts of the case. Furthermore, no reference is made to the notes in the report of the referee who was appointed to take proof of the facts set forth in the complaint, as well as to compute. In short, a studied purpose is observable throughout to conceal, if possible, the real nature of the transaction, for the obvious reason that a disclosure of particulars would have instantly revealed the invalidity of the mortgage upon the face of the record, and have rendered the judgment ineffectual. It was only the sheer necessity of alleging a previous effort to collect two of these notes by actions at law, and the exhaustion of the remedy, which compelled the pleader to betray himself, and led the purchaser to examine the judgment rolls, which disclosed the fact that the obligations which the mortgage was given to secure were not those of the executors at all, but represented debts incurred by and for the benefit of others. Whether there was or was not sufficient upon the face of the mortgage and the foreclosure record to call for the inquiry which the purchaser has made, it is unnecessary for me to discuss, and I do not undertake to decide it. It is enough that he has done so, with the result which appears. There is no dispute about the facts, and no effort has been made by the plaintiff to refute them, or to give them another complexion. He has contented himself with a refusal, through his attorney, to make any explanations in response to the request of the purchaser. The purchaser therefore has such notice of the fraudulent character of these proceedings as would place him outside of the pale of protection against any attack which might hereafter be made by those interested in setting them aside.

The situation, then, is that the court, in the exercise of its equitable jurisdiction, is called upon to aid the plaintiff in the consummation of a scheme to which he has been a party, by which a trust is to be destroyed, and a misappropriation of trust property accomplished. For it is not the making of the mortgage alone which has completed the act of devastation, but the sale under the judgment of foreclosure which the court is now asked to enforce. The statute provides that, "where the trust is or shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee in contravention of the trust shall be absolutely void." This mandate may be as effectually violated by trustees through suffering the recovery against them of an improper judgment, and a transfer of the trust property under it, as if they had undertaken to convey the property for a like unauthorized purpose. Both are means to an end which accomplishes the perpetration of the wrong, and in each case the co-operating party, whether he be called the grantee or the plaintiff, is an accomplice, and in no sense whatever entitled to any of the protections which the law casts about those who act in good faith. The case of Harris v. Larkins, 22 Hun, 488, illustrates the principle which is applicable to such a case as this. There a judgment had been recovered against unresisting trustees,

the effect of which was practically to destroy the trust. The court refused to compel the purchaser at the sale which was had under the judgment to complete, and, in the closing words of the opinion, rebuked the trustees, in words which are quite suitable to this case. "We must add," said the court, "that the trustees are highly reprehensible for remaining passive, and evidently conniving with the plaintiff in her effort to defeat the provisions of her husband's will, to subvert the trusts thereby created, and to effect a result which the laws of the state expressly forbid." A similar claim that the judgment protected the purchaser was there made, but was quickly overruled. The present case is one of great aggravation. The testator was not willing to intrust his estate to the absolute control of those for whose future he was desirous of providing, but, in order to insure for them a certain means of support, removed as far as possible from the vicissitudes of business, and the chances of dissipation through improvidence or misfortune, he had surrounded its custody and management with those safeguards which a trust relation and dependent limitations afford under the law. The contingency against which he intended to provide seems to have happened, and the wisdom of his action has been justified; but those to whom he confided the execution of his will have deliberately attempted to defeat his plans, and to subject his estate to the very casualties which his testamentary scheme was devised to prevent. The case is made still more serious by the fact that the breach of trust was committed for the benefit of the executrix herself, for she owned, in her individual right, nine-tenths of the stock of the corporation whose notes the mortgage was given to secure. Under these circumstances, there can be little doubt that it is within the power of the court to relieve this purchaser from his obligation to complete, and that it is its duty to do so, not only on his account, but also that it may free itself from any complicity in the violation of a trust which, in the exercise of one of its most important jurisdictions, it is required to protect. Neither the plaintiff nor the bank which he represents has any standing in a court of equity to be heard in the assertion of any claim under this mortgage, or under the judgment which they have obtained for its enforcement. They were fully cognizant of the facts, and were bound to know the law, especially a principle which is quite as much a rule of common honesty, that a trustee may not deal with his trust estate for the benefit of a person not interested in it, or for the personal profit of the trustee himself. The court is therefore unembarrassed by any intervening right or equity of which justice requires it to take heed, and will deal with the case as a breach of trust sought to be disguised under legal forms, and will treat the proceedings for the enforcement of the mortgage as one of the steps taken for its accomplishment.

The conclusion inevitably follows that the purchaser must be relieved, and the sale set aside. In closing, I think it proper to say that the guardian ad litem for the infant defendant, one of testator's children, having an interest in the property, should have defended the action, and that the duty still rests upon him to apply to the court to vacate the judgment, and to allow him to answer and

litigate the validity of the mortgage. The motion is granted, with $10 costs; the order to provide for the return to the purchaser of the amount paid by him, with interest, and the expenses incurred by him on the examination of the title; such costs, interest, and expenses to be paid by the plaintiff.

Motion granted, with $10 costs.